IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 90-cv-01071-LTB

ROBERT E. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor; and
CYNTHIA G. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor,

       Plaintiffs,

v.

UNITED STATES OF AMERICA,

       Defendant.
_____

**ORDER**
_____

       This matter is before me on the Government's Objection to the Tenth Annual Joint Report for the Calendar Year 2007 [**Docket # 489**], the Responses of the Guardian ad Litem and Trustee [**Docket ## 493, 494**], and the Government's Reply [**Docket # 496**]. A hearing on the Government's objection was held on October 3, 2008. After consideration of the papers and the case file, as well as the arguments made and evidence presented at the hearing, I find and conclude as follows.

**I. BACKGROUND**

       This case concerns Tasha Hill, who—while still an infant—was negligently treated at the Evans Army Community Hospital on October 17, 1988. In 1994, this Court entered judgment against the Government in the amount of $13,528,400.00, approximately three million dollars of which included future lost earning capacity, non-economic damages, and physical impairment and disfigurement damages. After payment of attorney fees and costs, the balance of the three

million dollars was placed into the Tasha R. Hill Trust.

Following an appeal to the Tenth Circuit, the parties entered into a settlement and Reversionary Trust concerning the remaining damages award that was approved by this Court on May 23, 1997. The Reversionary Trust includes approximately ten million dollars in "life care damages" that will revert to the Government upon Tasha Hill's death. The Reversionary Trust requires that the Trustee, SunTrust Bank, provide a detailed annual report to the Court including disbursements made during the prior year. The Government has sixty days to object to any disbursements.

On or about February 28, 2008, the Trustee submitted the 2007 annual report [**Docket # 475**]. Included in the 2007 annual report was a description of a $98,475.64 payment to Norrod Builders, Inc., for modifications to the Hill home that were necessary for purposes of installing a lift and hoist system to transport Tasha Hill from her living area to her bathroom, as well as modifications to the bathroom area. The 2007 report also indicated that additional expenses related to the lift system were expected to be incurred in 2008. The Trustee now informs the Court that the total payment to Norrod Builders in 2007 and 2008 was $115,824.00 [**Docket # 501**].

## II. PRESENT MOTION

The Government filed a motion on April 28, 2008, objecting to the use of Reversionary Trust funds for the modifications to the Hill residence [**Docket # 489**]. The Government notes that the trust agreement included an award "up to a maximum of $42,300.00 . . . over the life of the Beneficiary to help the Beneficiary's Parents defray the cost of home modification necessitated by the Beneficiary's physical impairments and the cost of maintenance of such

2

modifications," but otherwise stated: "The Trustee shall not pay for the purchase, lease, rental, construction, or modification of a home, or for the maintenance or insurance thereon." *See* Reversionary Trust ¶ 4(j). The Trustee admits "that all sums authorized by Paragraph 4.j. have been fully paid long ago by this Reversionary Trust." *See* Trustee Letter, March 14, 2008 [**Docket # 489-6**]. Accordingly, the Government requests the Court order the cost of the installation of the hoist system paid by the Reversionary Trust be reimbursed by the Tasha R. Hill Trust.

Tasha's Guardian ad Litem ("Guardian") and the Trustee filed separate Responses [**Docket ## 493, 494**]. They argue the hoist and bathing system is medically necessary and should be paid by the Revocable Trust pursuant to the Trust's purpose to "pay all necessary and reasonable expenses, regardless of cause." Reversionary Trust ¶ 4. The Guardian and Trustee also argue the cost of installing the hoist system is envisioned under introductory paragraph 4 of the Reversionary Trust: "However, nothing in this Paragraph 4 shall be interpreted to exclude developments in medical sciences and technologies." Although hoist systems existed when the Reversionary Trust was created that did not require home modifications, the hoist system installed in Tasha's home is claimed to be far superior. In order to install the "superior" hoist system, the existing ceiling and roof trusses had to be reinforced.

### III. STANDARD OF REVIEW

The Reversionary Trust is governed by, and construed according to, Colorado state law. *See* Reversionary Trust ¶ 19. The Colorado Supreme Court recently explained that a court's objective when interpreting a trust is to give effect to the intent of the settlors. *See Denver Foundation v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1122 (Colo. 2007). The cardinal rule in

3

making such an interpretation is to "read and interpret all the various documents at issue, as a whole. . . . and to construe the Trust instruments in their entirety to harmonize and give effect to all the provisions, rendering none meaningless or superfluous." *See id.*

Unambiguous language must be enforced in accordance with the plain and ordinary meaning of its terms. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). If a document is ambiguous—meaning it is reasonably susceptible to more than one interpetation—a court may use extrinsic evidence to assist it in ascertaining the intent of the parties. *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993). Where two clauses conflict, the more specific clause controls over the more general clause. *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. Ct. App. 2007).

## IV. ANALYSIS

By letter dated June 27, 2007, Tasha's Case Manager, Jack Dahlberg, informed the Trustee: "Tasha is critically in need of a larger bathing and showering area that would allow her to be showered in either a semi-seated position or lying supine on a gurney-type showering device." *See* Letter from Jack Dahlberg, June 27, 2007 [**Docket # 493-6**]. Dahlberg believed Tasha's current bathing accommodations were dangerous and modifications were "clearly necessary for Tasha's ongoing medical, hygiene, and safety needs." I do not in any way question this opinion. But the relevant inquiry here is whether the $115,824.00 expenditure at issue is one subject to the Reversionary Trust—that is, is it a prohibited home modification?

The introductory language of paragraph 4 of the Reversionary Trust states: "The Trustee shall pay all necessary and reasonable expenses, regardless of cause, <u>to the extent allowed below in this Paragraph 4</u>" (emphasis added). Accordingly, the plain language of the Trust indicates

4

the scope of allowable expenses in paragraph 4 is dictated by the subparagraphs. *See Massingill*, *supra*, 176 P.3d at 824.

It appears unambiguous—and indeed, the parties agree it is unambiguous—that the Reversionary Trust authorizes the Trustee to pay for "special medical equipment and special medical appliances," including "bath seats" and "hoists," and "for replacement of special medical equipment and special medical appliances, and for maintenance thereon." *See* Reversionary Trust ¶ 4(i). Accordingly, the cost of the hoist system is properly taxable to the Reversionary Trust.

The language in paragraph 4(j) also appears unambiguous: "The Trustee shall not pay for the purchase, lease, rental, construction, or modification of a home, or for the maintenance or insurance thereon." Even if the term "modification of a home" could be interpreted as ambiguous, however, prior rulings in this case—while not controlling—are informative to help dispel such ambiguity. *See Centennial-Aspen II Ltd. P'ship v. City of Aspen*, 852 F. Supp. 1486, 1492 (D. Colo. 1994) ("In determining whether a contract is ambiguous, the court may conditionally admit extrinsic evidence on this issue."). Because the parties did not define "home modification" in the Reversionary Trust, I assume they incorporated the definition inherent in their prior dealings at the time the Trust was written. *See id.* This Court previously defined "home modifications" to include "modifications to accommodate Tasha's special equipment and needs, including ramps, widened doorways, thermostatic controls, an accessible bathroom with special bathing facilities, audio-visual and electronic monitoring equipment, and additional space for the non-family caregiver." *Hill v. United States*, 854 F. Supp. 727, 732 (D. Colo. 1994). The Tenth Circuit further distinguished home modifications as being distinct from "medical

5

expenses" in its 1996 order in this case: "the government should receive a reversionary interest in that part of Tasha's award which covers future medical expenses. . . . Because the home modification award is not for future damages, it should be subtracted from the life care amount." *Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996). The term "home modification" does not appear ambiguous in light of these prior cases.

After a review of the documents submitted by the parties and the arguments made at the hearing, it is clear that—of the $115,824.00 paid to Norrod Builders, Inc.—$19,965.00 was for the cost of the hoist system. This amount is properly taxable to the Reversionary Trust under paragraph 4(i). It is also clear that $60,096.73 was for home modifications that were not necessary for installation of the hoist system, the cost of which are not taxable to the Reversionary Trust under paragraph 4(j).

The remaining $35,762.27 deserves some additional analysis. The Trustee and Guardian argue that disallowing the cost of these home modifications—which appear to have been necessary in order to safely install Tasha's special medical equipment—would "read out" the provisions of paragraph 4(i). I disagree. Construing the unambiguous terms of paragraph 4 together, in a manner that renders none superfluous, it appears the settlors intended that the purchase of a bath seat and hoist, as well as standard maintenance and replacement costs—which would include the cost of installation if the home was structurally sufficient to support installation of the hoist system without modification—would be payable by the Reversionary Trust. To the extent the installation would include costs of home modification other than that required to install the equipment in a structurally-sufficient home, however, such expenses would not be payable by the Trustee.

6

The additional $35,762.27 at issue covered removal and replacement of windows and walls, electrical wiring and circuitry, and reinforcing ceiling and roof structures, as well as profits and overhead for Norrod Builders. Notably missing from this amount are any costs incurred in actually installing the track or the hoist system. Indeed, the $19,965.00 appears to include all costs of installation that would have been incurred even if—or, in this case, after—the home was structurally sufficient to support installation of the hoist system without modification. *See* Joint Ex. 8 (noting the $19,965.00 "includes installation and training"). As the $19,965.00 included all standard installation costs, only these costs are properly taxable to the Reversionary Trust. Accordingly, the services rendered for $35,762.27 are properly considered modifications to the home that are not payable by the Reversionary Trust.

Although language in paragraph 6(c)(1) states, "In the event that the Trustee determines that the care is not appropriate or adequate, then the Trustee shall take all necessary measures to ensure that the appropriate care is provided," this does not affect my analysis. Paragraph 6 incorporates the limitations of paragraph 4 by reference: "The Trustee shall . . . pay allowable expenses to the extent and upon the terms allowed in Paragraph 4." Accordingly, the limitations of paragraph 4 are expressly applied to the Trustee's ability to "take all necessary measures to ensure that the appropriate care is provided." *See* RESTATEMENT (SECOND) OF TRUSTS § 186 (1959) ("the trustee can properly exercise such powers and only such powers as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust").

## V.  CONCLUSION

Accordingly, the Trustee IS HEREBY ORDERED to reimburse the Reversionary Trust in the amount of $95,859.00 for home modification costs erroneously paid in 2007 and 2008.

Dated: October  6 , 2008.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge