# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Action No. 90-cv-01071-LTB

ROBERT E. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor; and
CYNTHIA G. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.
_____

# ORDER
_____

This matter is before me on the Guardian ad Litem's Amended Motion for (A) Construction of the Irrevocable Reversionary Inter Vivos Medical Care Trust for the Care of Tasha R. Hill, to Recognize that Audrey Hill, as the Mother of Tasha R. Hill, is Entitled to Compensation for Providing Personal Attendant Care; (B) Allowance of Attorneys' Fees; and (C) Request for Expedited Briefing and for a Resolution of this Motion Before May 11, 2009 [**Docket # 545**], the Government's Memorandum in opposition [**Docket # 552**], and the Guardian ad Litem's Reply [**Docket 553**]; as well as the Government's Motion to Amend the Court's Interim Order Dated May 8, 2009, to make it a Final Order [**Docket # 555**], and the Guardian ad Litem's Response [**Docket # 558**]. Oral argument would not materially assist the determination of these motions. After consideration of the motions, the papers, and the case file,

and for the reasons stated below, I GRANT in part and DENY in part the Guardian ad Litem's Motion [**Docket # 545**] as follows.  The Government's Motion [**Docket # 555**] is DENIED AS MOOT.

## I.  BACKGROUND

This case concerns Tasha R. Hill ("Tasha"), who—while still an infant—was negligently treated at the Evans Army Community Hospital on October 17, 1988.  In 1994, this Court entered judgment against the Government in the amount of $13,528,400.00, approximately three million dollars of which included future lost earning capacity, non-economic damages, and physical impairment and disfigurement damages.  After payment of attorney fees and costs, the balance of the three million dollars was placed into the Tasha R. Hill Trust.  Following an appeal to the Tenth Circuit, the parties entered into a settlement and Reversionary Trust concerning the remaining damages award that was approved by this Court on May 23, 1997.  The Reversionary Trust includes approximately ten million dollars in "life care damages" that will revert to the Government upon Tasha's death.

The preamble to the Reversionary Trust states that Robert E. Hill and Cynthia G. Hill—Tasha's biological mother—will be referred to as "Parents" for the remainder of the trust. As relevant to the issues raised in the present motion, Paragraph 4(c) provides: "The Trustee shall pay for twenty-four-hour-a-day personal attendant care services for the Beneficiary, whether such services are provided in the home of her Parents or in a licensed, long-term care facility that provides attendant or residential care services for disabled persons."  Paragraph 4(c)(i) further provides that the "Parents" shall jointly—or singly, in the event of the other

"Parent" being unwilling or unable—be paid $185,000 per year for providing such services so long as the "Parents" are willing and able to do so.

As noted by the Guardian ad Litem, Cynthia Hill passed away in January 2007. Tasha's father, Robert E. Hill, has since remarried and his new wife, Audrey Hill, has formally adopted Tasha under the laws of Tennessee. The Guardian ad Litem requests the Court (i) enter an order finding Audrey Hill to be a "Parent" for purposes of the Reversionary Trust; (ii) enter an order modifying the Reversionary Trust such that Audrey Hill will be recognized as Tasha's "Parent" for purposes of the Trust; or (iii) enter an order finding the Trustee can hire Audrey Hill as an independent care giver under Paragraphs 4(c)(iv) and 5(j) of the Reversionary Trust.

On May 8, 2009, I entered an interim order provisionally granting the relief requested under (iii) for a period of one year [**Docket # 554**]. The Government now concedes the relief granted was appropriate under the terms of the Reversionary Trust [**Docket # 555**]. Accordingly, to the extent the Guardian ad Litem moves the Court to enter an order finding the Trustee can hire Audrey Hill as an independent care giver under Paragraphs 4(c)(iv) and 5(j) of the Reversionary Trust, the motion is granted on the terms stated in the May 8, 2009, Interim Order.

Finding the Trustee can hire Audrey Hill as an independent care giver under Paragraphs 4(c)(iv) and 5(j) of the Reversionary Trust does not render moot the Guardian ad Litem's motion to the extent the motion seeks to construe or construct the Reversionary Trust such that Audrey Hill should be considered a "Parent," as that term is defined therein. For example, the Reversionary Trust provides that the Trustee shall pay for training Tasha's "Parents" to better provide for Tasha's care—a benefit that does not appear to apply to an independent care giver.

*See* Reversionary Trust Paragraph 4(c).  Similarly, the Reversionary Trust provides that the Trustee shall only retain Tasha's "Parents" to provide for her care on the condition that Tasha is residing on a permanent and full-time basis in her "Parents'" home—a condition precedent that likewise does not appear to apply to an independent care giver.  *See id.*  Accordingly, I address the remaining issues raised in the Guardian ad Litem's motion below.

## II.  STANDARD OF REVIEW

The Reversionary Trust is governed by, and construed according to, Colorado state law. *See* Reversionary Trust Paragraph 19.  The Colorado Supreme Court recently explained that a court's objective when interpreting a trust is to give effect to the intent of the settlors.  *See Denver Foundation v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1122 (Colo. 2007).  The cardinal rule in making such an interpretation is to "read and interpret all the various documents at issue, as a whole . . . and to construe the Trust instruments in their entirety to harmonize and give effect to all the provisions, rendering none meaningless or superfluous."  *See id.*  The Court will also consider relevant circumstances in effect at the time the trust was executed to understand and find meaning in the instrument.  *See id.*

Unambiguous language must be enforced in accordance with the plain and ordinary meaning of its terms.  *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).  If a document is ambiguous—meaning it is reasonably susceptible to more than one interpretation—a court may use extrinsic evidence to assist it in ascertaining the intent of the parties.  *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).  Where two clauses conflict, the more specific clause controls over the more general clause.  *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. Ct. App. 2007).

### III. WHETHER AUDREY HILL IS TASHA'S "PARENT"
### FOR PURPOSES OF THE REVERSIONARY TRUST

It is not disputed that Audrey Hill is Tasha Hill's parent under both Tennessee and Colorado law. As noted by the Government, however, the Reversionary Trust does not refer to Tasha's parents in the general sense, but rather to Tasha's "Parents" as that term is defined in the preamble. In light of the specific definition of Tasha's "Parents" as "Robert E. Hill and Cynthia G. Hill," I find the term unambiguous. Accordingly, to the extent the Guardian ad Litem moves the Court to construe the Reversionary Trust such that Audrey Hill is considered a "Parent" of Tasha Hill, the motion is denied. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).

### IV. WHETHER THE TERM "PARENTS" AS EMPLOYED IN THE REVERSIONARY
### TRUST SHOULD BE MODIFIED TO INCLUDE AUDREY HILL

When considering whether a court should modify the terms of a trust, Colorado applies the principles outline in the Restatement of Trusts. *See Denver Found. v. Wells Fargo Bank, N.A.*, 140 P.3d 78, 84 (Colo. Ct. App. 2005) (applying RESTATEMENT (THIRD) OF TRUSTS § 66), *rev'd in part*, 163 P.3d 1116; *Matter of Will of Killin*, 703 P.2d 1323, 1326 (Colo. Ct. App. 1985) (applying RESTATEMENT (SECOND) OF TRUSTS § 167(1)). *Cf. Denver Found.*, 163 P.3d at 1125 (applying both the RESTATEMENT (SECOND) OF TRUSTS and the RESTATEMENT (THIRD) OF TRUSTS); *see also Hudson v. Wilhelm*, 651 F. Supp. 1062, 1065–66 (D. Colo. 1987). The RESTATEMENT (SECOND) OF TRUSTS § 167(1)—which was replaced by RESTATEMENT (THIRD) OF TRUSTS § 66 in 2003—states:

> The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the

>     purposes of the trust; and in such case, if necessary to carry out the purposes of
>     the trust, the court may direct or permit the trustee to do acts which are not
>     authorized or are forbidden by the terms of the trust.

This so-called "equitable deviation doctrine" was generally applicable only in an emergency situation and applied only when failure to modify the trust would jeopardize the accomplishment of the trust's purposes. *See* RESTATEMENT (THIRD) OF TRUSTS § 66, Comments and Reporter's Notes.

The RESTATEMENT (THIRD) OF TRUSTS § 66—which does not require an emergency and which may be employed whenever modification will further the purposes of the trust, *see id.*—states:

>     (1) The court may modify an administrative or distributive provision of a trust, or
>     direct or permit the trustee to deviate from an administrative or distributive
>     provision, if because of circumstances not anticipated by the settlor the
>     modification or deviation will further the purposes of the trust.
>     (2) If a trustee knows or should know of circumstances that justify judicial action
>     under Subsection (1) with respect to an administrative provision, and of the
>     potential of those circumstances to cause substantial harm to the trust or its
>     beneficiaries, the trustee has a duty to petition the court for appropriate
>     modification of or deviation from the terms of the trust.

The purpose of this section is to allow a court "to give effect to what the settlor's intent probably would have been had the circumstances in question been anticipated." *See* RESTATEMENT (THIRD) OF TRUSTS § 66, Comment a. As the Guardian ad Litem owes Tasha a fiduciary duty to act in her best interest commensurate with that owed by a trustee—and as the present motion clearly discharges this duty—the petition for modification falls well within the ambit of paragraph (2). *Cf.* Marie Walton and Donna Schmalberger, *Standards of Practice for Guardians ad Litem*, 21 COLO. LAW. 1907 (September 1992); COLO. REV. STAT. § 19-3-602(3).

It is beyond dispute that the death of Cynthia Hill in January 2007, the marriage of Robert Hill to Audrey Hill, and Audrey Hill's subsequent adoption of Tasha amount to "circumstances not anticipated by the settlor." Indeed, the express terms of the Reversionary Trust show the settlor—in this case, the Government—anticipated only that one of the "Parents" might die before Tasha, and did not anticipate the surviving parent's remarriage or the adoption of Tasha by the surviving parent's new spouse. *See* Reversionary Trust Paragraph 4(c)(i). The relevant question, therefore, is whether modifying the terms of the Reversionary Trust to include Audrey Hill as Tasha's "Parent" would further the purposes of the Trust such that—had the death of Cynthia Hill in January 2007, the marriage of Robert Hill to Audrey Hill, and Audrey Hill's subsequent adoption of Tasha been anticipated—the modification probably would have been intended by the settlor. *See Denver Found.*, 140 P.3d at 84; RESTATEMENT (THIRD) OF TRUSTS § 66, Comment a. I conclude it would.

The undisputed purpose of the Reversionary Trust was "to provide for the personal attendant care, and the medical, dental, therapeutic, cognitive, psychological, and rehabilitative care of the Beneficiary, regardless of the cause for such care, in order to maximize her mental development and minimize her physical disabilities." *See* Reversionary Trust Paragraph 4. The Reversionary Trust allows the Trustee to reimburse Tasha's parents—as they existed at the time of the Trust's formation—for training, home improvements, medical equipment, and support services, as well as family counseling and therapy. *See* Reversionary Trust Paragraphs 4(c), 4(c)(i), 4(c)(v), 4(d), 4(f), and 4(j). Payment of these additional costs would have been unnecessary if Tasha was not being cared for in her parents' home and demonstrate the

Reversionary Trust's clear preference that Tasha be cared for at home—and by her parents—on an ongoing basis.

As the Reversionary Trust is now written, the death or incapacity of Robert E. Hill will rob Tasha of her entitlement to the numerous benefits associated with being in the care of one of her "Parents"—despite having, in fact, both a legal parent and practicing care giver in Audrey Hill. Such a result—in addition to risking Tasha's physical and mental health—would be inequitable and would defeat the clear purpose of the Reversionary Trust. Accordingly, to the extent the Guardian ad Litem moves the Court for an order modifying the Reversionary Trust such that Audrey Hill will be recognized as Tasha's "Parent," the motion is granted.

## V.  CONCLUSION

In addition to the issues discussed above, both the Guardian ad Litem and the Government raise the issue of whether the Guardian ad Litem should be entitled to compensation for his efforts in pursuing this motion. Under the express terms of the Reversionary Trust, the Trustee is authorized to pay the Guardian ad Litem reasonable compensation for the performance of his duties. *See* Reversionary Trust Paragraphs 5(h), 6. As it is clear to the Court that the Guardian ad Litem's motion was brought for the benefit of Tasha, any expenses incurred in pursuit of the relief sought are compensable so long as they are reasonable. Under the terms of the Trust, the Government may object to any expenses it believes unreasonable within 60 days of the Trustee filing his annual report. *See* Reversionary Trust Paragraph 6(d). The Government is not authorized by the Reversionary Trust to preemptively object to any expenditures or—as its obdurate conduct in relation to the present motion suggests—to interfere in any way with the Trustee's duty to assure Tasha receives timely and appropriate care.

Accordingly, the Guardian ad Litem's Amended Motion for (A) Construction of the Irrevocable Reversionary Inter Vivos Medical Care Trust for the Care of Tasha R. Hill, to Recognize that Audrey Hill, as the Mother of Tasha R. Hill, is Entitled to Compensation for Providing Personal Attendant Care; (B) Allowance of Attorneys' Fees; and (C) Request for Expedited Briefing and for a Resolution of this Motion Before May 11, 2009 [**Docket # 545**] is GRANTED in part and DENIED in part as follows:

1. To the extent the Guardian ad Litem moves the Court to construe the Reversionary Trust such that Audrey Hill is considered a "Parent" of Tasha Hill, the motion is DENIED;

2. To the extent the Guardian ad Litem moves the Court for an order modifying the Reversionary Trust such that Audrey Hill will be recognized as Tasha's "Parent," the motion is GRANTED. Accordingly, IT IS ORDERED that—in each instance in which the Reversionary Trust refers to Tasha's "Parent" or "Parents"—that term shall include Audrey Hill;

3. To the extent the Guardian ad Litem moves the Court to enter an order finding the Trustee can hire Audrey Hill as an independent care giver under Paragraphs 4(c)(iv) and 5(j) of the Reversionary Trust—and to the extent such relief does not conflict with Paragraph 2 above—the motion is GRANTED. Accordingly, IT IS ORDERED as follows:

    a. If the Trustee directly employs Audrey Hill as Tasha's care giver pursuant to Paragraphs 4(c)(iv) and/or 5(j) of the Reversionary Trust, the Trustee may compensate Audrey Hill at the same rate currently paid to Robert Hill under the Trust, calculated on a pro rata basis for each day Robert Hill is unwilling or unable to provide for Tasha's personal care;

    b. The payment to Robert Hill shall be reduced by an amount equal to the amount paid to Audrey Hill;

    c. The Interim Order entered on May 8, 2009 [**Docket # 554**], is VACATED;

    d. In light of the relief granted herein, the Government's Motion to Amend the Court's Interim Order Dated May 8, 2009, to Make it a Final Order [**Docket # 555**] is DENIED AS MOOT;

  4. To the extent the Guardian ad Litem moves the Court for an order allowing the Trustee pay the Guardian ad Litem reasonable compensation for his efforts in pursuing this motion, the motion is GRANTED subject to the Government's right to object pursuant to Reversionary Trust Paragraph 6(d);

  5. To the extent the Guardian ad Litem moves the Court to enter an abbreviated briefing schedule and ruling, the motion is DENIED AS MOOT.

Dated: June  3 , 2009.

        BY THE COURT:

          s/Lewis T. Babcock
        Lewis T. Babcock, Judge