**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Action No. 90-cv-01071-LTB

ROBERT E. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor; and
CYNTHIA G. HILL, individually, and as parent and
next friend of Tasha R. Hill, a minor,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.
_____

**ORDER**
_____

      Law and equity protect widows, orphans, and children. The first priority of the Reversionary Trust here is to protect and foster quality of life for its beneficiary, Tasha R. Hill, now an adult. It has served this laudatory goal smoothly and seamlessly for a decade until a relatively minor dispute surfaced in 2008 concerning purchase and installation of a hoist system required for Tasha's health and safety. The Government, remainderman under the Reversionary Trust, now takes a scorched earth tack in its administration. While I recognize the Government's standing under this trust, this tack is not good for Tasha.

      This matter is now before me on the Government's Objections to the Eleventh Annual Joint Report for the Calendar Year 2008 Pertaining to the Irrevocable Reversionary Inter Vivos Medical Care Trust for the Benefit of Tasha R. Hill, Motion for Further Information, and Motion for Reimbursement to the Reversionary Trust [**Docket # 547**]; the Responses of former Trustee SunTrust Bank ("Trustee") [**Docket # 560**] and the Guardian ad Litem [**Docket # 561**]; and the

Government's combined Reply [**Docket # 564**].  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY in part and HOLD IN ABEYANCE in part the Government's Motion [**Docket # 547**] as follows.

## I. BACKGROUND

This case concerns Tasha R. Hill ("Tasha"), who—while still an infant—was negligently treated at the Evans Army Community Hospital on October 17, 1988.  In 1994, this Court entered judgment against the Government in the amount of $13,528,400.00, approximately three million dollars of which included future lost earning capacity, non-economic damages, and physical impairment and disfigurement damages.  After payment of attorney fees and costs, the balance of that three million dollars was placed into the Tasha R. Hill Trust.  Following an appeal to the Tenth Circuit, the parties entered into a settlement and Reversionary Trust concerning the remaining damages award that was approved by this Court on May 23, 1997.  The Reversionary Trust included approximately ten million dollars in "life care damages" that will revert to the Government upon Tasha's death.

The Reversionary Trust provides that, each year, "[t]he Trustee . . . shall provide an annual report to the Court having jurisdiction over the Irrevocable Reversionary Trust.  The report shall include a detailed financial accounting of the Trust Estate, including disbursements during the prior year by category, a current statement of the Trust assets, and a statement regarding Trust management and investment strategies."  *See* Reversionary Trust Paragraph 6(d).  The United States is then given sixty days to file objections.  *See id.*

In February 2008, the Trustee submitted the 2007 annual report. [**Docket # 475**]. Included in the 2007 annual report was a description of a $98,475.64 payment to Norrod Builders, Inc., for modifications to the Hill home that were necessary for purposes of installing a lift and hoist system to transport Tasha from her living area to her bathroom, as well as modifications to the bathroom area. The 2007 report also indicated that additional expenses related to the lift system were expected to be incurred in 2008. The Trustee ultimately informed the Court that the total payment to Norrod Builders in 2007 and 2008 was $115,824.00. [**Docket # 501**].

The Government, as it had a right to do, chose to object to these payments because Reversionary Trust Paragraph 4(j) prohibits payment for home modifications. [**Docket # 489**]. Although the Government did not obtain reimbursement of all it sought, I ordered the Trustee to reimburse the Reversionary Trust $95,859.00 for the home modifications erroneously paid in 2007 and 2008. [**Docket # 504**]. I determined that the remaining $19,965.00 paid to Norrod Builders was for the cost of the hoist system itself and this amount was properly taxed to the Reversionary Trust under paragraph 4(I)

On February 26, 2009, the Trustee—now former Trustee—and Guardian ad Litem submitted a joint annual report for 2008. [**Docket # 533**]. The Government filed five objections, raising seven issues: (1) an objection to the Reversionary Trust making payments to, or on behalf of, any party for fees, costs, or expenses related to the home modification dispute; (2) an objection to the increase in former Trustee SunTrust's management fees; (3) an objection to the Guardian ad Litem's fees to the extent they did not relate to the home modification dispute; (4) an objection to the Reversionary Trust making payments to the Case Manager for fees, costs, or

expenses related to the home modification dispute; (5) an objection to the 2008 annual report in general as lacking adequate specificity; (6) an objection to the Trustee and Guardian ad Litem engaging in *ex parte* communication and submitting a joint annual report; and (7) an objection to the continued retention of a Guardian ad Litem and Case Manager located in Colorado. [**Docket # 547**]. The Trustee and Guardian ad Litem filed separate responses. [**Docket # 560, 561**].

## II.  STANDARD OF REVIEW

The Reversionary Trust is governed by, and construed according to, Colorado state law. *See* Reversionary Trust Paragraph 19. The Colorado Supreme Court recently explained that a court's objective when interpreting a trust is to give effect to the intent of the settlors. *See Denver Foundation v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1122 (Colo. 2007). The cardinal rule in making such an interpretation is to "read and interpret all the various documents at issue, as a whole . . . and to construe the Trust instruments in their entirety to harmonize and give effect to all the provisions, rendering none meaningless or superfluous." *See id.* The Court will also consider relevant circumstances in effect at the time the trust was executed to understand and find meaning in the instrument, and will apply the principles outlined in the Restatement of Trusts. *See id.* at 1125.

Unambiguous language must be enforced in accordance with the plain and ordinary meaning of its terms. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). If a document is ambiguous—meaning it is reasonably susceptible to more than one interpretation—a court may use extrinsic evidence to assist it in ascertaining the intent of the parties. *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993). Where two clauses conflict, the

more specific clause controls over the more general clause. *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. Ct. App. 2007).

### III.  ANALYSIS

<u>A.  Objection to Payments to, or on Behalf of, any Party for Fees, Costs, or Expenses Related to the Home Modification Dispute</u>

The Reversionary Trust empowers the Trustee: "To pay allowable expenses to the extent allowed in Paragraph 4 . . . and to pay all expenses incurred in the administration of the Irrevocable Reversionary Trust, including reasonable compensation to the Trustee and . . . to a Guardian ad Litem appointed by the United States District Court for the District of Colorado . . . and to employ or appoint and pay reasonable compensation to . . . attorneys, attorneys-in-fact, agents (with or without discretionary powers), and case managers, if any." *See* Reversionary Trust Paragraph 5(h).  Paragraph 4, in turn, requires the Trustee to pay "all necessary and reasonable expenses, regardless of cause," including "case management services to the extent deemed necessary by the Trustee." *See* Reversionary Trust Paragraph 4(e).

Under the terms of the Trust, the Government may object to any expenses it believes unreasonable within 60 days of the Trustee filing its annual report. *See* Reversionary Trust Paragraph 6(d).  The Government initially argues that any fees, costs, or expenses related to the home modification dispute are *per se* unreasonable because this Court found the home modifications could not be paid for by the Reversionary Trust.  There is no merit to this argument.

Under the express terms of the Reversionary Trust, the Trustee is authorized to pay the Guardian ad Litem and itself reasonable compensation for the performance of their respective

fiduciary duties. *See* Reversionary Trust Paragraphs 5(h), 6, 13, 16(b). For purposes of determining the appropriate payment of fees, costs, and expenses, the ultimate resolution of the home modification dispute is immaterial. *See* RESTATEMENT (THIRD) OF TRUSTS § 77, comment a ("In matters relating to the administration of the trust, the trustee has a duty to exercise prudence. . . The test of prudence is one of conduct not of performance. The trustee's conduct, and compliance with other fiduciary standards, is to be judged as of the time of the decision or action in question. Thus, the prudence of a trustee's conduct is to be judged on the basis of circumstances at the time of that conduct, not with the benefit of hindsight or by taking account of developments that occur after the time of the action or decision."). Where, as here, the Guardian ad Litem and Trustee pursued their position in the home modification dispute in a manner consistent with their fiduciary duties to Tasha, any expenses incurred in that pursuit are compensable so long as they are reasonable. *See* Reversionary Trust Paragraph 5(h); RESTATEMENT (THIRD) OF TRUSTS § 88, comment b ("A trustee is not limited to incurring expenses that are 'necessary' or essential, but may incur expenses that, in the exercise of fiduciary judgment, are reasonable and appropriate in carrying out the purpose of the trust, serving the interests of the beneficiaries, and generally performing the functions and responsibilities of the trusteeship."). The Court will interfere only to prevent an abuse of discretion. *See* RESTATEMENT (THIRD) OF TRUSTS § 87.

It is clear to this Court that the Guardian ad Litem and the Trustee pursued the home modification dispute in accordance with their fiduciary duties owed to Tasha and according to the express purpose of the Reversionary Trust—namely, "to provide for the personal attendant care, and the medical, dental, therapeutic, cognitive, psychological, and rehabilitative care of the

Beneficiary, regardless of the cause for such care, in order to maximize her mental development and minimize her physical disabilities." *See* Reversionary Trust Paragraph 4.  The Guardian ad Litem and the Trustee both have a fiduciary duty to act in a manner that ensures adequate funds are available to pay for Tasha's needs for the rest of her life.  *See* Reversionary Trust Paragraphs 4, 16.  To that end, the Reversionary Trust expressly provides that the Trustee—when considering "any attorneys' fees and reimbursement of costs or expenses to be paid by the Trustee to the Guardian ad Litem"—must "consider the other resources available to the beneficiary from the Tasha R. Hill Trust to pay said Guardian ad Litem's attorneys' fees and reimbursable costs or expenses."  *See* Reversionary Trust Paragraph 16(b)(4).  Merely acquiescing in the Government's objections regarding the home modification dispute—objections that, while ultimately successful, were not so indisputably valid as to render their challenge unreasonable—would be a violation of these fiduciary duties.

 I am unpersuaded by the Government's argument that allowing the Reversionary Trust to pay the Guardian ad Litem and Trustee's costs associated with the home modification dispute "is effectively assessing attorneys' fees against the United States."  Initially, I note that the Government's argument—that fees paid by the Reversionary Trust violate the sovereign immunity of the United States—is presented without any supporting law.  Although the Court is unaware of any Colorado law speaking directly on point, the Government's argument appears contrary to a general rule holding that expenses—including attorney fees—paid by a trust are not considered to be paid by the remainderman.  *See* Joseph D. Seckelman & John H. Bothwell, *Expenses of Estates, Trusts and Fiduciaries*, 6 MERTENS LAW OF FEDERAL INCOME TAXATION § 25A:15 (2009); *see also Helvering v. Campbell*, 313 U.S. 15, 21–22 (1941); *Matter of Estate of*

7

*Greatsinger*, 492 N.E.2d 751, 754–55 (N.Y. 1986); *Neave v. Commissioner of Internal Revenue*, 17 T.C. 1237, 1241 (T.C. 1952); *cf. Williams v. Stander*, 354 P.2d 492 (Colo. 1960). And—even if attorney fees assessed against the Reversionary Trust could be considered fees against the United States—the Reversionary Trust expressly recognizes that compensation paid to the Guardian ad Litem or to an attorney retained by the Trustee for purposes of effectuating the Trust's intent is not considered an award of attorney fees, but rather an "expense incurred in the administration of the Irrevocable Reversionary Trust." *See* Reversionary Trust Paragraph 5(h).

The Government's arguments seek to preserve the corpus of the trust at the expense of Tasha's other—and significantly more limited—sources of support. This objective is in direct contradiction of the express purpose of the Reversionary Trust—a purpose agreed to by the Government more than ten years ago—and improperly conflates the role of settlor and remainderman of the Reversionary Trust with that of a beneficiary. The language of the Reversionary Trust is quite clear: "The Trustee shall pay all necessary and reasonable expenses, regardless of cause." *See* Reversionary Trust Paragraph 4. The Reversionary Trust provides no means for the Government to object to spending that will better Tasha's station in life—a station in which she was unwilling placed by the actions of the Government, the undisputed tortfeasor in this matter—unless such spending is specifically prohibited by express language elsewhere in the Trust. *See id.*

As the position of the Guardian ad Litem and the Trustee throughout the home modification dispute was justified—and both the Guardian ad Litem and the Trustee had a fiduciary duty to zealously advocate their ultimately unsuccessful position—any reasonable costs related to litigating the home modification dispute were properly taxable to the Reversionary

Trust. Accordingly, because the Government presents no evidence that the fees charged were unreasonable under these circumstances, I find the fees incurred—to the extent not addressed in the remainder of this Order—were reasonable and properly paid by the Trustee.

### B. Objection to Increases in SunTrust's Management Fees

Under Paragraph 13(b) of the Reversionary Trust, the Court may retroactively disallow fees or expenses charged by the Trustee to the extent the Court finds such fees or expenses unreasonable. The Government objects to former Trustee SunTrust's Management Fees in 2008 as potentially unreasonable, and requests the Court order SunTrust to provide a detailed accounting of the fees in 2006, 2007, and 2008, in order to allow the Government to determine whether the fees paid in 2008 were reasonable.

SunTrust claims the Management Fees charged in 2008 were charged in accordance with the rate described in a fee letter of July 26, 2007. [**Docket # 560-3**]. According to the fee letter, the fee amount is determined as a percentage of the market value of the trust account and is charged on a monthly basis. SunTrust calculated the fee charged the Reversionary Trust by taking the current published fee normally charged for a trust of comparable size, and then applying a thirty percent discount. Fees charged at such a discount are clearly reasonable.

As noted by the Government, however, is unclear why the fee charged in 2008 would be greater than the fee charged in 2007, particularly in light of the fact that—as noted in the 2008 annual report [**Docket # 533**]—the dollar value of the Trust corpus decreased by more than $1.5 million in that time period. While market fluctuations from month to month can explain some of this ambiguity, questions remain. For example, from June to July, the market value of the trust account decreased $54,828.15, yet the management fee increased from $4,239.98 to

9

$5,597.93—an increase of over thirty percent. SunTrust's response does not address this discrepancy.

In light of the significant costs already associated with the disputes presented in the Government's motion, I am loathe to expend additional Reversionary Trust funds on this issue. Accordingly—to the extent such a resolution is practicable and will result in the preservation of Reversionary Trust funds—the parties are directed to engage, in good faith, to resolve this issue without further Court intervention and to provide a joint status report indicating their progress on or before July 27, 2009. Should such a resolution not occur by that date, former Trustee SunTrust is instructed to file a brief response accounting for the calculation of the management fees charged in 2008.

## C. Objection to the Guardian ad Litem's Fees

The Guardian ad Litem, Mr. Goldberg, is charged with protecting Tasha's best interests—and he has done so. In order to properly meet this charge, he had—and continues to have—a duty to monitor the Reversionary Trust expenditures to ensure that adequate funds are available to pay for her ever-present needs. The home modification dispute clearly showed Tasha's limited resources—beyond those available from the Reversionary Trust—are vulnerable to rapid and sudden depletion due to her changed circumstances. The Guardian ad Litem acted in accord with his fiduciary duty to Tasha by advocating the home modification costs be paid from the significantly-more-substantial Reversionary Trust corpus. Accordingly, and as held above, the Guardian ad Litem's fees in 2008—to the extent the fees were incurred protecting Tasha's interests in the home modification dispute—were properly taxed to the Reversionary Trust and any objection on that basis must fail.

The Government further objects, however, to other fees charged by the Guardian ad Litem in 2008 because the fees were more than double the amount charged in 2007 and nearly triple the amount charged in 2006. It is well-known to the Court and the parties that Tasha and her family were subject to a series of unforeseen circumstances in 2007 and 2008—including, but not limited to, the death of Cynthia Hill, the remarriage of Robert Hill, and the adoption of Tasha by Audrey Hill; adverse market conditions and staffing changes leading to the ultimate resignation of SunTrust as Trustee; and the arrest of Robert Hill on capital murder charges of which he was ultimately acquitted—that required a significant increase in the demand for the Guardian ad Litem's services in 2008. Moreover, the Government's pugnacious emerging strategy—after ten years of civilized cooperation—of engaging in expensive and time-consuming litigation of each dispute has required the Guardian ad Litem to fulfill a proper expanded role not necessitated in past years. In light of these developments, the Guardian as Litem's increased fees and expenses are reasonable.

Similar to the management fees, however, it is not clear from the Annual Report how the Guardian ad Litem's fees and expenses were calculated. Indeed, the papers filed in connection with this new dispute suggest that the Guardian ad Litem may have inadvertently been paid for services already rendered by Tasha's Case Manager. *See* Guardian ad Litem's Response, pp. 20, 23 [**Docket # 564**]. In light of the significant costs already associated with the disputes presented in the Government's motion, I am likewise loathe to expend additional Reversionary Trust funds on this issue. Nonetheless—to the extent such a resolution is practicable and will result in the preservation of Reversionary Trust funds—the parties are directed to engage, in good faith, to resolve this issue without further Court intervention and to provide a joint status

report indicating their progress on or before July 27, 2009. Should such a resolution not occur by that date, the Guardian as Litem is instructed to file a brief response accounting for the calculation of the fees and expenses charged in 2008.

### D. Objection to the Case Manager's Fees

The Government's objection to the Case Manager's fees largely tracks its objection to the Guardian ad Litem's fees. Although the Government objects to the Case Manager's participation in the home modification dispute, the Reversionary Trust specifically provides for the Trustee to pay for case management services to the extent deemed necessary by the Trustee. *See* Reversionary Trust Paragraphs 4(e), 5(h). It is clear that the Trustee was justified in believing the Case Manager's services would protect Tasha's interests in that dispute. Indeed, the very purpose of providing for a Case Manager in the Reversionary Trust is to ensure Tasha's medical decisions are made with the contribution of a person with expertise on the medical concerns at issue. Tasha's Case Manager, Mr. Dahlberg, is an expert in the field with a breadth of knowledge and experience matched by few others. Accordingly—to the extent the fees were incurred protecting Tasha's interests in the home modification dispute—the Case Manager's fees were properly taxed to the Reversionary Trust and any objection on that basis must fail.

The Government further objects, however, to the fees charged by the Case Manager in 2008 because the fees were double the amount charged in 2007 and six times the amount charged in 2006. Similar to the increased fees charged by the Guardian ad Litem, Tasha's unusual circumstances in 2007 and 2008 show the Case Manager's increased fees and expenses are reasonable. Also similar to the Guardian ad Litem's fees, however, it is not clear from the Annual Report how the Case Manager's fees and expenses were calculated. Accordingly—to

12

the extent such a resolution is practicable and will result in the preservation of Reversionary Trust funds—the parties are directed to engage, in good faith, to resolve this issue without further Court intervention and to provide a joint status report indicating their progress on or before July 27, 2009.  Should such a resolution not occur by that date, former Trustee SunTrust is instructed to file a brief response accounting for the calculation of the fees paid to the Case Manager in 2008.

### E.  Objection to the 2008 Annual Report in General as Lacking Adequate Specificity

It is expected that the Government's objection to the specificity of the 2008 annual report will be addressed by resolution of the objections discussed in the paragraphs above.  To the extent the Government's objection is not resolved on or before July 27, 2009, however, the Government is instructed to file a brief response specifying the remaining disputed amounts and the basis for objection.

### F.  Objection to the Trustee and Guardian ad Litem Engaging in *ex Parte* Communication and Submitting a Joint Annual Report

For the past five years, the Guardian ad Litem and the Trustee have submitted joint annual reports.  [**Docket ## 533, 475, 466, 457, 453**].  Now—apparently due to the recent change in Trustee—the Government seeks a curious order from this Court requiring any future Trustee to file its annual report without assistance from or consultation with the Guardian ad Litem.  In support, the Government cites to Paragraph 6(d) of the Reversionary Trust: "The Trustee, in consultation with the Trust Auditor, shall provide an annual report to the Court. . . . Copies of the Trustee's annual reports shall be provided to the Parents, the legal guardian, if any, the Guardian ad Litem, if any, and to the United States at the time of submission to the Court."

13

But on its face, Paragraph 6(d) does not prohibit the Trustee from consulting with the Guardian ad Litem when preparing its annual report. It is proper—and preferable—for the Trustee to do so. Similarly, Paragraph 6(d) does not prohibit the Trustee from submitting a joint report with the Guardian ad Litem. Again, there is nothing improper in doing so. Indeed, close consultation between the Trustee and the Guardian ad Litem serves economic efficiency and—as the Reversionary Trust intends—enures to Tasha's ultimate benefit. Accordingly, the Government's objection to the practice of submitting joint reports has no support in the express language of the Reversionary Trust itself. Any objection on that basis must fail.

But the Government goes further and argues it should be allowed to participate in any conversations between the Trustee and the Guardian ad Litem. Again, the Government points to no provision in the Reversionary Trust justifying its argument, nor could it, as the Reversionary Trust provides that the Government may object to Trustee expenditures only after the annual report has been filed. *See* Reversionary Trust Paragraph 6(d). The Government is not entitled to an expansion of its limited role, particularly where, as here, the Government fails to show how such an expansion would serve the purposes of the trust. Indeed, as noted by the Guardian ad Litem, allowing the Government to interject itself into the communications between the Trustee and Guardian ad Litem would empower the Government to delay or deny the delivery of benefits to Tasha—an absurd result that is not provided by, and is entirely contrary to the purpose of, the Reversionary Trust. The Government's thinly-veiled motion to amend the Reversionary Trust is denied.

### G.  Objection to the Continued Retention of a Guardian ad Litem and Case Manager Located in Colorado

There is still more. The Government moves to dismiss the Guardian ad Litem and Case Manager from this case and to provide for the appointment of a new Guardian ad Litem and Case Manager located in Tennessee. Although the Government couches its argument in terms of benefit to Tasha, the zeal with which the Government pursues its extensive, costly, and largely baseless other objections shows its interest lies not in preserving the quality of life due Tasha, but rather with preserving the corpus of the trust in which is has only a remainder interest. Both the Guardian ad Litem and Case Manager—as is their duty—have obstructed the Government's pursuits to that end. While a Guardian ad Litem and Case Manager in Tasha's state of residence might adequately protect her interests, the fierce advocacy provided by Mr. Goldberg and Mr. Dahlberg on Tasha's behalf convinces me that, even if the costs associated with their retention may be higher than those required to retain a Guardian ad Litem and Case Manager in Tennessee—an assumption that is unsupported in any case—they are indeed the best persons for the job. It is their loyal and professional service to Tasha and this Court that best furthers this Court's supervisory role under the trust. The Government's motion is therefore denied.

## IV. CONCLUSION

It is clear that the fees incurred by the Trustee, the Guardian ad Litem, and the Case Manager during the litigation of the home modification dispute were incurred in accordance with the duties owed to Tasha and the express purposes of the Reversionary Trust. To the extent these fees were reasonable, therefore, they were properly paid by the Reversionary Trust. Upon review of the documents submitted in connection with the Government's objections, however, the basis for the fees charged is not entirely clear. While confident—in light of the findings and conclusions in this Order—that the parties can resolve these issues without further Court

intervention, I am mindful that a new Trustee has been appointed and that any outstanding disputes should be resolved promptly and efficiently.

Accordingly, IT IS ORDERED that the Government's Objections to the Eleventh Annual Joint Report for the Calendar Year 2008 Pertaining to the Irrevocable Reversionary Inter Vivos Medical Care Trust for the Benefit of Tasha R. Hill, Motion for Further Information, and Motion for Reimbursement to the Reversionary Trust [**Docket # 547**] is DENIED in part and HELD IN ABEYANCE in part as follows:

1. To the extent the Government seeks clarification of the basis for the payments made to the Trustee, the Guardian ad Litem, and the Case Manager, resolution of the objections is HELD IN ABEYANCE as follows. To the extent such resolution is practicable and will result in the preservation of Reversionary Trust funds, the parties are directed to engage, in good faith, to resolve these issues without further Court intervention and to provide a joint status report indicating their progress on or before July 27, 2009. Should such resolution not occur by that date, IT IS ORDERED that:

    a. Former Trustee SunTrust is instructed to file a brief response accounting for the calculation of the management fees charged in 2008;

    b. The Guardian ad Litem is instructed to file a brief response accounting for the calculation of the fees and expenses charged in 2008; and

    c. Former Trustee SunTrust is instructed to file a brief response accounting for the calculation of the fees paid to the Case Manager in 2008;

2. To the extent the Government's remaining objections regarding the specificity of the 2008 annual report are not resolved in conjunction with the specific objections addressed in

Paragraph 1 on or before July 27, 2009, the Government is ORDERED to file a brief response specifying the remaining disputed amounts and the basis for objection;

3. The Government's motion is otherwise DENIED.

Dated: June   29  , 2009.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Judge